# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 2:13-cr-00048 |
| v. | ) |
| | ) Judge Mark R. Hornak |
| RAFAEL CABRERA | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Mr. Cabrera is charged with one count of conspiracy to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, under 21 U.S.C. § 846. Pending before the Court is Mr. Cabrera's Motion to Suppress Evidence, which seeks to exclude from evidence items seized when law enforcement officers conducted an arrest and search of Mr. Cabrera on February 11, 2013, at Love's Rest Stop in Carlisle, Pennsylvania. The Court held an evidentiary hearing and oral argument on the Motion on January 17, 2014, and has considered the Affidavit in Support of the Complaint, ECF No. 1-1, the Defendant's Motion to Suppress Evidence, ECF No. 42, and the United States' Response in Opposition, ECF No. 53. For the reasons that follow, the Court will deny the Motion to Suppress.

## I. BACKGROUND

On January 10, 2013, Pittsburgh Police detectives arranged for a confidential source ("CS1") to purchase a small quantity of heroin from a known heroin supplier ("CS2"). ECF No. 1-1 at ¶ 5. At the time of the meeting, police arrested CS2, who was in possession of heroin. *Id.* CS2 agreed to cooperate with the police and provided them with thousands of dollars in cash and a large quantity of heroin. *Id.* at ¶ 6. CS2 later advised law enforcement that he regularly purchased heroin from an individual from the Patterson, New Jersey area, who he knew only as

"Rubio." *Id.* at ¶ 8. According to CS2, he would meet Rubio every two to three weeks at a rest stop in or near Carlisle, Pennsylvania, where Rubio would collect heroin sales proceeds from CS2 and re-supply CS2 with heroin. *Id.* CS2 also provided law enforcement with Rubio's cellular phone number and advised that he was planning to meet Rubio for a new heroin supply within the next two weeks. *Id.* at ¶ 10.

Over the next month law enforcement officials monitored CS2 as he placed four consensually recorded telephone calls to Rubio and sent and received numerous text messages to and from Rubio's cellular phone. *Id.* at ¶¶ 11-17. The content of these calls and messages concerned the arrangement of a meeting between CS2 and Rubio for the purposes of CS2 paying Rubio a portion of an outstanding debt, and Rubio re-supplying CS2 with heroin. *Id.* On February 8, 2013, CS2 received a text message from Rubio instructing CS2 to deposit $3,000.00 in the PNC Bank account of Rafael Cabrera. *Id.* at ¶ 18. CS2 then placed another consensually recorded call to Rubio, arranging a meeting at Love's Rest Stop in Carlisle for February 11, 2013. *Id.* at ¶ 19.

At approximately 12:50 p.m. on February 11, 2013, law enforcement officers observed a man matching CS2's description of Rubio entering Love's Rest Stop in a silver Toyota 4Runner. *Id.* at ¶ 22. At the officers' request, CS2 directed Rubio by text message to move his vehicle next to CS2's vehicle. *Id.* at ¶ 23. Consistent with this instruction, the driver promptly pulled the 4Runner up next to CS2's vehicle. *Id.* He next entered the indoor portion of the rest area, during which time Rubio attempted to call CS2 twice. *Id.* at ¶ 24. The man then exited the indoor area and stood by CS2's vehicle. *Id.* at ¶ 25. At that time, Pennsylvania State Troopers, acting in concert with members of the FBI Pittsburgh Safe Street and Gang Task Force, arrested him. *Id.* At the hearing on the Motion to Suppress, a member of the FBI task force present at the

scene of the arrest testified that law enforcement officers searched the man's person and found three bundles of heroin, a plastic baggie containing raw heroin, two cellular phones, and a New Jersey driver's license. Using the driver's license, officers identified him as Rafael Cabrera. *Id.* at 26. Officers also searched the 4Runner and found a duffel bag containing a large quantity of heroin inside.[1] *Id.*

On January 17, 2014, the Court held an oral argument on a number of pretrial motions filed by Defendant, as well as an evidentiary hearing and argument on Defendant's Motion to Suppress. The United States presented evidence, including records of text messages between CS2 and Rubio, toll records, pictures of the vehicle and the contents of the bag found inside the vehicle at the time of Mr. Cabrera's arrest, a surveillance video from Love's Rest Stop depicting a portion of the events preceding the arrest, and testimony from an FBI agent who was present at the scene of the arrest and had been involved in the related investigation.

## II. DISCUSSION

Mr. Cabrera argues that law enforcement officers lacked probable cause to arrest him without a warrant, and therefore their resulting searches of his person and the car were unreasonable under the Fourth Amendment. He seeks suppression of the items gleaned from those searches under the exclusionary rule fashioned by the Supreme Court in *Weeks v. United States*, 232 U.S. 383 (1914). Under the exclusionary rule, the Fourth Amendment bars the prosecution from introducing evidence obtained through an illegal search or seizure. *Davis v. United States*, 131 S.Ct. 2419, 2423 (2011).

---

[1] At the evidentiary hearing, the Court confirmed through testimony from an FBI agent who was present at the scene of the arrest that law enforcement officers found the duffel bag, and the heroin inside, during the search of the vehicle in Carlisle. Accordingly, the Court need not reach the issue of the later inventory search of the vehicle conducted in Pittsburgh, Pennsylvania, which is detailed in the United States' Response in Opposition, ECF No. 53 at ¶ 93.

3

The Fourth Amendment shields individuals from unreasonable searches. *Draper v. United States*, 358 U.S. 307, 308 n.1 (1959). Searches conducted without a warrant "are *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 763 (1969). The scope of a search incident to arrest is limited to the arrestee's person and the area within his immediate control. *Id.*

Warrantless arrests must be based on probable cause. *Draper*, 358 U.S. at 310-11. Probable cause entails that at the time of arrest, the facts and circumstances within the knowledge of the arresting agents, and of which they have reasonably trustworthy information, are sufficient to warrant a prudent individual in believing that the arrestee committed or is committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The probable cause inquiry requires a totality-of-the circumstances analysis as to whether a fair probability existed that a crime was or was being committed by the arrestee. *Illinois v. Gates*, 462 U.S. 213, 246 (1983).

The Court concludes that law enforcement officers possessed the requisite probable cause to arrest Mr. Cabrera without a warrant. Officers had learned from a confidential informant that an individual named "Rubio" was routinely providing a regular supply of heroin to the informant via meetings at a rest stop in Carlisle for distribution in the Pittsburgh area. Over approximately the next month, they had monitored multiple telephone calls and text messages between the informant and Rubio organizing just such a meeting. The calls and messages indicated that Rubio would be bringing a large quantity of heroin with him to the rest stop. On the scheduled day of the meeting, at the rest stop designated by the informant and Rubio in their correspondence, the officers observed a man who matched the informant's description of Rubio entering the rest stop. The officers had the informant contact Rubio and instruct him to move his

4

car next to the informant's. They then observed the man promptly take that exact action. After the man entered the indoor area of the rest stop, he returned to a point next to the informant's car and waited there.

Under these circumstances, it is plain to the Court that the officers had reasonably trustworthy information to establish at least a fair probability that the man they were observing was Rubio, and that he was engaging in unlawful activity. Therefore, they had probable cause to arrest Rubio, who turned out to be Mr. Cabrera. Because the officers' arrest of Mr. Cabrera was lawful, their search of his person incident to that arrest was also permissible. *Draper*, 358 U.S. at 310-11. Accordingly, the Court will not suppress any of the fruits of that search.

Police may also search the passenger compartment and any containers within an individual's vehicle[2] incident to a lawful arrest when it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle. *Arizona v. Gant*, 556 U.S. 332, 343-44 (2009). The Court concludes that it was reasonable for officers to believe that evidence of the crime of arrest -- conspiracy to distribute heroin -- could be found in Mr. Cabrera's car. The communications between the informant and Rubio established that Rubio would bring a large quantity of heroin to the rest stop. Along with the informant's payment to Rubio, the delivery of heroin was the express purpose of that meeting and part of an allegedly established course of conduct between the two. The officers also observed events, detailed previously in this Opinion, that led them to reasonably believe that the man they were arresting was Rubio. Additionally, the search of the arrestee produced several baggies of heroin, a quantity of raw heroin, and a New Jersey driver's license identifying him as Rafael Cabrera – the name on the bank account into which Rubio had instructed the informant to deposit money. Based on that

---

[2] The United States points out that the Toyota was not registered to Mr. Cabrera, and he has not acknowledged ownership of it or its contents, calling into question his standing to challenge the search of them. Given the Court's disposition of the Motion, it need not reach that issue.

5

information, the officers lawfully searched Mr. Cabrera's car and the duffel bag inside it incident to his arrest, and the Court will therefore not suppress the items seized from the car.

## III. CONCLUSION

The Court will deny Defendant's Motion to Suppress on the basis that his warrantless arrest was supported by probable cause, and officers reasonably believed that evidence of a conspiracy to distribute heroin could be found by searching his car. An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: February 11, 2014

cc: All Counsel of Record